1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 26, 2021

SEAN F. McAVOY, CLERK

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

RAFAEL L.,

8

                    Plaintiff,

9

        v.

10

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL

11

SECURITY,

12

                    Defendant.

NO:  2:20-CV-00093-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13

14        BEFORE THE COURT are the parties' cross motions for summary

15 judgment.  ECF Nos. 13, 15.  This matter was submitted for consideration without

16 oral argument.  Plaintiff is represented by Attorney Jeffrey Schwab.  Defendant is

17 represented by Special Assistant United States Attorney Stephen Dmetruk.  The

18 Court has reviewed the administrative record, the parties' completed briefing, and

19 is fully informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's

20 Motion for Summary Judgment, ECF No. 13, and **DENIES** Defendant's Motion

21 for Summary Judgment, ECF No. 15.

ORDER ~ 1

**JURISDICTION**

Plaintiff Rafael L.[1] protectively filed an application for Supplemental Security Income (SSI) on May 30, 2017, Tr. 56, alleging an onset date of May 17, 2016 due to anxiety, obsessive compulsive disorder (OCD), posttraumatic stress disorder (PTSD), a broken finger on the right hand, seizure disorder, degenerative disc disease, degenerative joint disease, and a traumatic brain injury (TBI), Tr. 148. Plaintiff's application was denied initially, Tr. 83-86, and upon reconsideration, Tr. 90-92.  A hearing before Administrative Law Judge Raymond L. Souza ("ALJ") was conducted on December 18, 2018.  Tr. 28-55.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Carrie Whitlow.  *Id*.  The ALJ denied SSI benefits on January 30, 2019.  Tr. 15-23.  The Appeals Council denied review on January 15, 2020.  Tr. 1-5.  Plaintiff requested judicial review of the ALJ decision by this Court on March 10, 2020.  ECF No. 1.  The ALJ's January 30, 2019 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

1    transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

2    Only the most pertinent facts are summarized here.

3        Plaintiff was 36 years old at the date of application.  Tr. 147.  Plaintiff

4    completed his GED in 2001.  Tr. 197.  Plaintiff has never had formal employment

5    because he was incarcerated from  May 13, 1996 to 2016.  Tr. 196-97, 160, 261.

6                                **STANDARD OF REVIEW**

7        A district court's review of a final decision of the Commissioner of Social

8    Security is governed by 42 U.S.C. §§ 405(g), 1383(c).  The scope of review under

9    § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not

10   supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698

11   F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence

12   that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at

13   1159 (quotation and citation omitted).  Stated differently, substantial evidence

14   equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.*

15   (quotation and citation omitted).  In determining whether the standard has been

16   satisfied, a reviewing court must consider the entire record as a whole rather than

17   searching for supporting evidence in isolation.  *Id.*

18       In reviewing a denial of benefits, a district court may not substitute its

19   judgment for that of the Commissioner.  "The court will uphold the ALJ's

20   conclusion when the evidence is susceptible to more than one rational

21   interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

ORDER ~ 3

Further, a district court will not reverse an ALJ's decision on account of an error

that is harmless. *Id*. An error is harmless where it is "inconsequential to the

[ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

ORDER ~ 4

1  C.F.R. § 416.920(b).

2       If the claimant is not engaged in substantial gainful activity, the analysis

3  proceeds to step two.  At this step, the Commissioner considers the severity of the

4  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

5  "any impairment or combination of impairments which significantly limits [his or

6  her] physical or mental ability to do basic work activities," the analysis proceeds to

7  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

8  this severity threshold, however, the Commissioner must find that the claimant is

9  not disabled.  20 C.F.R. § 416.920(c).

10       At step three, the Commissioner compares the claimant's impairment to

11  severe impairments recognized by the Commissioner to be so severe as to preclude

12  a person from engaging in substantial gainful activity.  20 C.F.R. §

13  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

14  enumerated impairments, the Commissioner must find the claimant disabled and

15  award benefits.  20 C.F.R. § 416.920(d).

16       If the severity of the claimant's impairment does not meet or exceed the

17  severity of the enumerated impairments, the Commissioner must pause to assess

18  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

19  defined generally as the claimant's ability to perform physical and mental work

20  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

21  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

ORDER ~ 5

1    At step four, the Commissioner considers whether, in view of the claimant's

2  RFC, the claimant is capable of performing work that he or she has performed in

3  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

4  capable of performing past relevant work, the Commissioner must find that the

5  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

6  performing such work, the analysis proceeds to step five.

7    At step five, the Commissioner considers whether, in view of the claimant's

8  RFC, the claimant is capable of performing other work in the national economy.

9  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

10  must also consider vocational factors such as the claimant's age, education and

11  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

12  adjusting to other work, the Commissioner must find that the claimant is not

13  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

14  other work, analysis concludes with a finding that the claimant is disabled and is

15  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

16    The claimant bears the burden of proof at steps one through four.  *Tackett v.*

17  *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

18  the burden shifts to the Commissioner to establish that (1) the claimant is capable

19  of performing other work; and (2) such work "exists in significant numbers in the

20  national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386,

21  389 (9th Cir. 2012).

ORDER ~ 6

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, May 30, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; seizure disorder; PTSD; anxiety disorder; and OCD.  Tr. 17.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equaled the severity of a listed impairment. Tr. 17.  The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 416.967(b) with the following limitations:

> no climbing ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  The claimant must avoid all exposure to hazards (including moving machinery and unprotected heights).  The claimant is limited to simple, routine work with an SVP 1 and 2.  The claimant can have no more than occasional interaction with the general public, coworkers, and supervisors.

Tr. 19.

At step four, the ALJ found that Plaintiff had no past relevant work.  Tr. 22. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: production assembler; inspector and hand packager; and garment folder.  Tr. 23.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from May 30, 2017, the date of application, through the date of his decision. Tr. 23.

ORDER ~ 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him SSI under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1.   Whether the ALJ erred in evaluating the medical opinion evidence;

2.   Whether the ALJ properly considered Plaintiff's symptom statements; and

3.   Whether the ALJ made a proper step five determination.

**DISCUSSION**

**1.    Medical Opinion Evidence**

Plaintiff challenges the ALJ's finding that the April 20, 2017 opinion of R.A. Cline, Psy.D. was persuasive.  ECF No. 13 at 8-11.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources.  20 C.F.R. § 416.920c(a).  Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source. 20 C.F.R. § 416.920c(c).  The ALJ is required to consider multiple factors,

ORDER ~ 8

1  including supportability, consistency, the source's relationship with the claimant,

2  any specialization of the source, and other factors (such as the source's familiarity

3  with other evidence in the file or an understanding of Social Security's disability

4  program).  *Id*.  The regulations make clear that the supportability and consistency

5  of the opinion are the most important factors, and the ALJ must articulate how she

6  considered those factors in determining the persuasiveness of each medical opinion

7  or prior administrative medical finding.  20 C.F.R. § 416.920c(b).  The ALJ may

8  explain how he considered the other factors, but is not required to except in cases

9  where two or more opinions are equally well-supported and consistent with the

10  record.  *Id*.

11       Supportability and consistency are further explained in the regulations:

12       (1) *Supportability*.  The more relevant the objective medical evidence
         and supporting explanations presented by a medical source are to
13       support his or her medical opinion(s) or prior administrative medical
         finding(s), the more persuasive the medical opinions or prior
14       administrative medical finding(s) will be.

15       (2) *Consistency*.  The more consistent a medical opinion(s) or prior
         administrative medical finding(s) is with the evidence from other
16       medical sources and nonmedical sources in the claim, the more
         persuasive the medical opinion(s) or prior administrative medical
17       finding(s) will be.

18  20 C.F.R. § 416.920c(c).

19       On May 26, 2016, Dr. Cline evaluated Plaintiff and later completed a

20  Psychological/Psychiatric Evaluation form for the Washington Department of

21  Social and Health Services (DSHS).  Tr. 260-64.  He diagnosed Plaintiff with

ORDER ~ 9

OCD, panic disorder, and PTSD.  Tr. 262.  Plaintiff completed a Rey 15-Item

Memory Test (RMT) with a score of 10 indicating an average level of effort and

cooperation with the task and "meets basic criteria for non-malingering at this

time."  Tr. 261.  Dr. Cline opined that Plaintiff had a marked limitation in the

abilities to communicate and perform effectively in a work setting, to maintain

appropriate behavior in a work setting, and to complete a normal workday and

work week without interruptions form psychologically based symptoms.  Tr. 263.

He also opined that Plaintiff had a moderate limitation in five additional areas of

basic work activity.  Tr. 262-63.

On April 20, 2017, Plaintiff completed a second evaluation of Plaintiff and

later completed a Psychological/Psychiatric Evaluation form for DSHS.  Tr. 265-

69.  Plaintiff completed a RMT with a score of 3, indicating "a poor level of effort

and cooperation with the task and does not provide evidence of non-malingering."

Tr. 265.  Therefore, Plaintiff was given a Test of Memory Malingering (TOMM)

with scores of 19 and 25 that "do not provide evidence of non-malingering."  *Id*.

Plaintiff was then diagnosed as malingering, and Dr. Cline stated that "[c]laimant

has previously been diagnosed with PTSD, OCD and panic disorder by this writer

but due to the presence of significant malingering today, these diagnoses are

suspended at this time."  Tr. 265.  Dr. Cline made the following statement

regarding the finding of malingering:

//

ORDER ~ 10

1
2
3
4
5
6
7
8
9

> There are multiple reasons that claimants malinger, but when a claimant is found to be malingering it is usually for one of two reasons, either to look better or worse than they truly are.  In this context claimants typically malinger in order to appear worse off than they truly are and thus access benefits of some kind.  As their malingering indicates a level of untruthfulness severity ratings cannot be made and symptoms cannot be described accurately on the basis of their self-report and will not be provided in the assessment.  Any diagnoses that are provided aside from malingering should be viewed as provisional.  Malingering is not a static state, and the level of malingering will wax and wane with the person's motivation to access benefits.  Thus re-evaluation for malingering is valid, generally after about 6 months.  Additionally, it should be noted that TOMM is highly insensitive to organic brain syndrome, meaning that those with significant TBI or legitimate cognitive problems typically pass this assessment when they are not malingering.

Tr. 266.

10

The ALJ found Dr. Cline's 2017 opinion was "persuasive and supported by

11

the test administered by Dr. Cline documenting the claimant's exaggeration of

12

symptoms."  Tr. 21.  The ALJ further characterized the 2017 evaluation as Dr.

13

Cline "rescinded the prior diagnoses of OCD, panic disorder, and PTSD."  Tr. 21.

14

Plaintiff challenges the ALJ's finding that the opinion was persuasive because the

15

finding of malingering was not supported by substantial evidence.  ECF No. 13 at

16

11.

17

At the 2017 evaluation, Plaintiff reported to Dr. Cline that he had a history

18

of a head injury that resulted in a loss of consciousness for 36 hours and a history

19

of a seizure disorder beginning in 2016.  Tr. 265.  Following a third seizure,

20

Plaintiff was sent for an MRI of the brain in 2016.  Tr. 319-21.  The MRI was

21

performed on December 14, 2016, and showed that "[a] prominent area of the

ORDER ~ 11

increased T2 and FLAIR signal involves the deep and subcortical white matter of

the right frontal lobe." Tr. 399.  The radiologist's impression was that there was an

"[a]rea of encephalomalacia involving the right frontal lobe.  This may relate to an

old insult." *Id*.  Dr. Packer, who reviewed Dr. Cline's records and the MRI stated

that "[t]he 4/20/17 Psych assessment of malingering must be very much discounted

in view of the evident post-TBI findings on brain MRI, with seizure focus and

encephalomalacia in the [right] frontal lobe." Tr. 271.  Dr. Packer stated a second

time that "psych statements regarding malingering are superseded by objective

findings on MRI brain." *Id*.

At the time of his 2017 evaluation and opinion, Dr. Cline did not review any

records other than his previous 2016 Psychological/Psychiatric Evaluation form for

DSHS.  Tr. 265 ("Records reviewed: Previous assessment by this writing dated

5/26/16 with diagnoses of PTSD, OCT, and panic disorder.").  Plaintiff informed

him of his head injury and the recent onset of seizure activity.  *Id*.  Dr. Cline

appeared aware that such an injury may result in the TOMM results being

inaccurate as he included the statement that the test is "highly insensitive to

organic brain syndromes, meaning those with significant TBI or legitimate

cognitive problems typically pass this assessment when they are not malingering,"

and cited to a medical periodical supporting this assertion.  Tr. 266.  Therefore, the

introduction of the MRI into the record caused a reviewing provider, Dr. Packer, to

reject the finding of malingering.  Tr. 270.  Therefore, the record, as it currently

ORDER ~ 12

1    stands, is ambiguous regarding malingering.

2         "In Social Security cases the ALJ has a special duty to fully and fairly

3    develop the record and to assure that the claimant's interests are considered."

4    *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  "An ALJ's duty to develop

5    the record . . . is triggered only when there is ambiguous evidence or when the

6    record is inadequate to allow for proper evaluation of the evidence."  *Mayes v.*

7    *Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683,

8    687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is

9    triggered by ambiguous evidence, the ALJ's own finding that the record is

10   inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is

11   ambiguous.").  The ALJ failed to address and resolve this ambiguity, which was an

12   error.

13        This ambiguity could have been properly addressed by the ALJ calling a

14   medical expert to testify at the hearing regarding Dr. Cline's finding of

15   malingering in April of 2017 and the MRI showing the TBI in December of 2016.

16   The case is remanded for the ALJ to properly address this ambiguity and call a

17   medical expert to testify at a supplemental hearing.  At that time, the medical

18   expert can also provide testimony regarding Dr. Cline's language suspending a

19   diagnosis due to malingering compared to the ALJ's language rescinding a

20   diagnosis due to malingering as brought forth in the parties' briefings.  If

21   additional testing is necessary to properly develop the record, the ALJ will send

ORDER ~ 13

1   Plaintiff for additional consultative evaluations to perform the necessary testing.

2   **2.      Plaintiff's Symptom Statements**

3          Plaintiff argues that the ALJ erred in his treatment of his symptom

4   statements.  ECF No. 13 at 11-13.

5          An ALJ engages in a two-step analysis when evaluating a claimant's

6   testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

7   whether the claimant has presented objective medical evidence of an underlying

8   impairment which could reasonably be expected to produce the pain or other

9   symptoms alleged."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "The

10  claimant is not required to show that his impairment could reasonably be expected

11  to cause the severity of the symptom he has alleged; he need only show that it

12  could reasonably have caused some degree of the symptom."  *Id*.

13         Second, "[i]f the claimant meets the first test and there is no evidence of

14  malingering, the ALJ can only reject the claimant's testimony about the severity of

15  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

16  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

17  citations and quotations omitted).

18         The issue of malingering is to be addressed further in remand proceedings.

19  Therefore, Plaintiff's symptom statements will need to be addressed further once

20  the issue of malingering is resolved.

21  ///

ORDER ~ 14

1    **3.     Step Five**

2         Plaintiff's step five argument is derivative of his challenge to the ALJ's

3    finding of malingering.  ECF No. 13 at 18.  Therefore, the ALJ will readdress step

4    five upon remand.

5                                  **CONCLUSION**

6         The decision whether to remand for further proceedings or reverse and

7    award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

8    888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

9    where "no useful purpose would be served by further administrative proceedings,

10   or where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

11   *Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

12   remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280

13   (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

14   (noting that a district court may abuse its discretion not to remand for benefits

15   when all of these conditions are met).  This policy is based on the "need to

16   expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are

17   outstanding issues that must be resolved before a determination can be made, and it

18   is not clear from the record that the ALJ would be required to find a claimant

19   disabled if all the evidence were properly evaluated, remand is appropriate.  *See*

20   *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211

21   F.3d 1172, 1179-80 (9th Cir. 2000).


ORDER ~ 15

1        Here, Plaintiff did not request an immediate award of benefits, ECF No. 13

2    at 16-17, and further administrative proceedings are necessary for the ALJ to

3    resolve the ambiguity regarding evidence of Plaintiff malingering compared to the

4    evidence of Plaintiff's TBI.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

5    1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further

6    administrative proceedings would serve a useful purpose).  Therefore, the Court

7    remands this case for further proceedings consistent with this Order.

8        On remand, the ALJ will supplement the record with any outstanding

9    evidence, call a medical expert to testify at a remand hearing to resolve the issue of

10   Plaintiff's malingering testing and his TBI, and send Plaintiff for an tests that are

11   required to properly develop the record.  Additionally, the ALJ will readdress

12   Plaintiff's symptom statements and make a new step five determination.  The ALJ

13   will call a vocational expert to testify in making the new step five determination.

14       **ACCORDINGLY, IT IS HEREBY ORDERED:**

15       1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED,**

16          and the matter is remanded for further proceedings consistent with this

17          Order.

18   //

19   //

20   //

21   //

ORDER ~ 16

1      2.  Defendant's Motion for Summary Judgment, ECF No. 15 is **DENIED**.

2  The District Court Executive is hereby directed to enter this Order and provide

3  copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

4      DATED this 26th day of April 2021.



Stanley A. Bastian
Chief United States District Judge

ORDER ~ 17